## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>VENOCO, LLC, *et. al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Bankr. Case. No. 17-10828 (KG)<br><br>(Jointly Administered) |
| EUGENE DAVIS, in his capacity as Liquidating Trustee of the Venoco Liquidating Trust,<br><br>Plaintiff,<br>v.<br><br>STATE OF CALIFORNIA and CALIFORNIA STATE LANDS COMMISSION,<br><br>Defendants. | JURY TRIAL DEMANDED<br><br>Bankr. Adv. Pro. No. 18-50908 (KG) |
| STATE OF CALIFORNIA,<br><br>Appellant,<br>v.<br><br>EUGENE DAVIS, in his capacity as Liquidating Trustee of the Venoco Liquidating Trust,<br>Appellee. | Civil Action No. 19-mc-00007-CFC |
| CALIFORNIA STATE LANDS COMMISSION,<br><br>Appellant,<br>v.<br><br>EUGENE DAVIS, in his capacity as Liquidating Trustee of the Venoco Liquidating Trust,<br>Appellee. | Civil Action No. 19-mc-00011-CFC |

---

[1] The debtors in the Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: Venoco, LLC (3555); TexCal Energy (LP) LLC (0806); Whittier Pipeline Corporation (1560); TexCal Energy (GP) LLC (0808); Ellwood Pipeline, Inc. (5631); and TexCal Energy South Texas, L.P. (0812) (collectively, the "Debtors"). The mailing address for the Venoco Liquidating Trust, for purposes of the Chapter 11 cases, is 5 Canoe Brook Drive, Livingston, NJ 07039.

-2-

## MOTION OF APPELLANTS STATE OF CALIFORNIA AND CALIFORNIA STATE LANDS COMMISSION TO EXTEND THE STAY OF THE UNDERLYING ADVERSARY PROCEEDING PENDING THE OUTCOME OF THE APPELLANTS' APPEAL

Appellants State of California (the "State") and the California State Lands Commission (the "Commission") (the State and Commission are collectively referred to as the "Appellants"),[2] by and through their respective undersigned counsel, move this Court for entry of an order extending the bankruptcy court's stay of the above-captioned adversary proceeding pending the resolution of Appellants' appeals, and in support thereof state as follows.

## I.  INTRODUCTION

This case is the result of appeals from an adversary proceeding in the United States Bankruptcy Court (Adv. Pro. No. 18-50908), in which the post-confirmation liquidation trustee brought a post-plan-confirmation, state-law inverse condemnation claim against the Appellants.  The Appellants moved to dismiss the Trustee's complaint, based on, among other things, their respective sovereign immunity under the Eleventh Amendment to the United States Constitution.  The bankruptcy court denied the motion to dismiss, and the Appellants appealed that

---

[2]  The adversary proceeding was commenced by Eugene Davis, in his capacity as Liquidating Trustee of the Venoco Liquidating Trust (the "Trustee").

ruling to this Court.[3]   The Appellants then sought a stay of the adversary proceeding until their appeal on *at least* sovereign immunity grounds could be resolved on the merits.  Recognizing that the adversary proceeding must be stayed until the appeal is resolved, the bankruptcy court granted a stay of the proceeding on January 22, 2019.  D.I. at 74.  However, the bankruptcy court granted a stay for only 28 days, until February 19, 2019, and kept the March 19, 2019 trial date on calendar.  *Id.*

As discussed in detail below, the 28-day stay is obviously not enough time to complete the proceedings in this Court and to provide a final resolution of the Appellants' appeal.  Once the Court rules on what issues can be appealed in this Court (the Appellants have moved to appeal not only the sovereign immunity claim, but also their other jurisdictional defenses), briefing of and a hearing on the appeal of those issues will likely take at least 90 days after such ruling.  Moreover, the parties will participate in the Court's mandated mediation program, which, under the rules, is supposed to occur even before the parties are required to submit their briefs on the merits of the appeal.  Finally, the party who loses the appeal

---

[3]  The State filed its notice of appeal on January 8, 2019 [D.I. 36], initiating Case No. 19-mc-00007 before this Court.  The Commission filed its notice of appeal on January 9, 2019 [D.I. 41], initiating Case No. 19-mc-00011 before this Court.  The Appellants are filing this motion jointly to conserve judicial resources, as the arguments that support an extended stay pending appeal are substantially the same.  However, the filing of this joint motion in no way waives the Appellants' separate legal status, as explained in *People ex rel Lockyer v. Superior Court*, 122 Cal. App. 4th 1078-80 (Cal. Ct. App. 2004) ("Each agency or department of the state is established as a separate entity, under various state laws or constitutional provisions.").

before this Court will have 30 days to appeal this Court's ruling to the Third Circuit. *See* Fed. Rule of App. Proc. 4(a)(1)(A). Thus, the Court should extend the stay to run until at least 30 days after entry of this Court's judgment or order on the appeal.

## II.  BRIEF FACTUAL AND PROCEDURAL BACKGROUND

This is an appeal arising out of the bankruptcy case of Venoco, LLC ("Venoco"), an oil company. Prior to filing for bankruptcy, Venoco extracted oil from what is known as the South Ellwood Field, which is state land located off the Santa Barbara coast,[4] using "Platform Holly," a fixed multi-well oil production platform located about two miles off the coast. Venoco transported the oil by pumping it from Platform Holly to an on-shore treatment plant called the Ellwood Onshore Facility, where the oil was processed. From the Ellwood Onshore Facility, oil was pumped through onshore oil pipelines to refiners. One of those onshore oil pipelines was called Line 901.

On May 19, 2015, Line 901 ruptured, thereby spilling over 142,000 gallons of crude oil onto in the Pacific Ocean. Following the spill, Line 901 was closed and oil extracted from the South Ellwood Field could not be economically transported to market. As a result of the long-tern closure of Line 901, Venoco became financially unable to survive. One day prior to filing for bankruptcy,

---

[4]  Venoco leased the land from the Commission.

Venoco quitclaimed certain of its leasehold interest for the South Ellwood Field back to the Commission, although Venoco kept its ownership interest in the Ellwood Onshore Facility.

The quitclaim of the South Ellwood Field did not relieve Venoco of its regulatory obligations to plug and abandon the wells in the South Ellwood Field. It also did not eliminate the serious risk to the public from the wells that Venoco drilled and used prior to bankruptcy. To prevent further environmental damage and harm to public safety, the Commission stepped in to handle the plug and abandonment work that Venoco had failed to perform, and to decommission the oil wells, Platform Holly, and other facilities on the lands previously leased to Venoco. However, until the wells are fully plugged and abandoned, pressure from wells drilled by Venoco will continue to push oil and gas to the Ellwood Onshore Facility, where it must be processed and either stored or removed. In Venoco's bankruptcy case, the Commission filed a proof of claim asserting damages of $130 million for the costs that have been and will be incurred by the Commission in connection with this work.

On May 23, 2018, the U.S. Bankruptcy Court for the District of Delaware entered an order confirming Venoco's plan of reorganization. Under the plan, substantially all of the property of the Venoco bankruptcy estate, including the Ellwood Onshore Facility, was vested in the Venoco Liquidating Trust (the

"Trust"), and the Trust assumed all of Venoco's environmental obligations. In order to preserve any setoff rights for claims arising after Venoco filed for bankruptcy, Venoco's creditors were required to file administrative claims in the bankruptcy court by an established deadline.  Solely to preserve its setoff rights and not to receive a distribution, the Commission filed a protective administrative claim.

On October 16, 2018, Eugene Davis (the "Trustee"), in his capacity as Liquidating Trustee of the Trust filed a complaint [A.D.I. 1] (the "Complaint") in the bankruptcy court against the Appellants asserting a claim of inverse condemnation under California law and a claim for relief under section 105 of 11 U.S.C. §§ 101-1532.  In essence, the Trustee, as successor to Venoco, seeks to extract millions from the Commission because the Commission must use the Ellwood Onshore Facility (a site with no fair market value due to its own environmental remediation issues and legal nonconforming use status) to perform Venoco's environmental obligations.

On November 11, 2018, the Commission and the State filed their respective motions to dismiss, in which they argued, among other things, (i) they are immune from suit in any federal forum under the Eleventh Amendment to the United States Constitution and related principles of sovereign immunity; (ii) the Trust is unable to pursue a condemnation claim against the Defendants until it first exhausts state-

law remedies for the Commission's non-exclusive use of the Elwood Onshore Facility; and (iii) the Bankruptcy Court lacked subject matter jurisdiction to maintain the lawsuit, because a plan had been confirmed in the bankruptcy case and the inverse condemnation action was not a core proceeding nor was there "related to' jurisdiction.

Following a hearing on December 12, 2018, the bankruptcy court entered an order and opinion on January 2, 2019, denying the Appellants' motions to dismiss. On January 7, 2019, the State filed a notice of appeal [D.I. 36], and on January 8, 2019, the Commission filed a notice of appeal [D.I. 41].

On January 11, 2019, the bankruptcy court entered a scheduling order, expediting discovery and trial of the adversary proceeding, which included a discovery cut-off date of February 18, 2019, and a trial date of March 19, 2019. The Appellants filed a motion on January 8, 2019, seeking a stay of the adversary proceeding. The bankruptcy court granted the stay until February 19, 2019, but also kept the March 19, 2019 trial date on calendar.

### III. THE COURT SHOULD EXTEND THE STAY OF THE ADVERSARY PROCEEDING FOR BOTH LEGAL AND PRACTICAL REASONS

**A.**     **The Court should extend the stay of the adversary proceeding because the Appellants are entitled to a final resolution of their sovereign immunity claim and, in any event, the bankruptcy court has been divested of its jurisdiction over the adversary proceeding.**

This Court has recognized that "during an interlocutory appeal from the denial of an eleventh amendment claim, the trial court should stay all further proceedings." *Bell Atlantic-Delaware, Inc. v. Global NAPS South, Inc.*, 77 F. Supp. 2d 492, 497 (D. Del. 1999). In fact, the *Bell Atlantic-Delaware* court outlined the "basic principles" of Eleventh Amendment immunity law, which includes staying the underlying proceedings until the appeal is resolved on the merits:

> The caselaw recognizes a number of procedural rules that serve to protect the eleventh amendment rights of States. Issues of sovereign immunity are threshold matters in litigation that must be disposed of "at the earliest possible stage." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Eleventh amendment claims must not be deferred pending other proceedings before the trial court. *See Bouchard Transportation Co. v. Florida Department of Environmental Protection*, 91 F.3d 1445, 1447 (11th Cir.1996) (ruling that trial court erred when it reserved a ruling on sovereign immunity issues and ordered parties to mediate). If an eleventh amendment claim is denied, the sovereign party is entitled to an immediate interlocutory appeal. *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 113 S. Ct. 684, 121 L. Ed. 2d 605 (1993). And during an interlocutory appeal from the denial of an eleventh amendment claim, the trial court should stay all further proceedings. *Goshtasby v. Board of Trustees*, 123 F.3d 427 (7th Cir.1997).

*Id.* Many courts have held that the timely appeal of a litigant taking an appeal of an adverse ruling on claimed immunity mandates a stay of the trial court proceedings. *Bowers v. National Collegiate Athletic Ass'n*, 188 F. Supp.2d 473, 482 (D.N.J. 2002) (holding that the trial court is "obliged to grant" an appellant's

request for a stay in the proceedings until the appeal is resolved on the merits); *Goshtasby v. Board of Trustees*, 123 F. 3d 427, 429 (7th Cir. 1997) ("Because the University's appeal is not frivolous, proceedings in the discovery court are stayed until this appeal has been resolved on the merits.").

Moreover, courts also recognize that during an interlocutory appeal on immunity grounds the trial court is divested of jurisdiction. *United States v. Leppo*, 634 F.2d 101 (3d Cir. 1980); *Stewart v. Donges*, 915 F.2d 572, 576 (10th Cir. 1990) ("[A]n interlocutory appeal from an order refusing to dismiss on . . . qualified immunity grounds relates to the entire action and, therefore, it divests the district court of jurisdiction to proceed with any part of the action against an appealing defendant."); *May v. Sheahan*, 226 F.3d 876, 879-81 (7th Cir. 2000) (an interlocutory appeal from an order refusing to dismiss on qualified immunity grounds relates to the entire action and, therefore, it divests the district court of jurisdiction to proceed with any part of the action against an appealing defendant); *Sacred Heart Hosp. v. Dept. of Pub. Welfare (In re Sacred Heart Hosp.)*, 204 B.R. 132 (E.D. Pa. 1997) (recognizing that "a lower court is automatically divested of jurisdiction over the lawsuit") (citing *Main Line Fed'l Sav. & Loan Ass'n v. Tri-Kell*, 721 F.2d 904, 906 (3d Cir. 1983)); *Abrahams v. Incorporated Village of Hempstead*, 390 Fed. Appx. 4, 5 (2d Cir. 2010) ("a notice of appeal [from a denial of immunity] divests a district court of jurisdiction").

The reasoning for these rules is eminently sound—"if the defendant is correct that it has immunity, its right to be free of litigation is compromised, and lost to a degree, if the [trial] court proceeds while the appeal is pending." *Goshtasby*, 123 F.3d at 428. The same is true "with an appeal by a state under the eleventh amendment," since "[t]he Constitution gives states a right to confine litigation to their own courts[.]" *Id.* In *Goshtasby*, the court analogized the issue to one it had already addressed in *Apostol v. Gallion*, 870 F.2d 1335 (7th Cir. 1989) — *i.e.,* where a public official takes an interlocutory appeal to assert a claim of absolute or qualified immunity. *Id.* The court concluded that, so long as an immunity appeal is not frivolous, the district court must stay proceedings until the appeal is resolved on the merits. *Id.* at 428-29; *see also Apostol*, 870 F.2d at 1338 (appeal from denial of claims of immunity divested district court of jurisdiction); *Blinco v. Green Tree Servicing, LLC*, 366 F.3d 1249 (11th Cir. 2004) (stay pending appeal of a denial of immunity proper because sovereign immunity protects a defendant "from having to bear the burdens attendant to litigation") (citing *Goshtasby*, 123 F.3d at 428).

The immunity-asserting appellant is also entitled to a stay under the collateral order doctrine.[5] *Puerto Rico Aqueduct and Sewer Authority v. Metcalf &*

---

[5] The collateral order doctrine is an exception to the general rule under 28 U.S.C. § 1291 prohibiting appeals from all but "final decisions." *See Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949) (explaining that an appeal could be taken if it were in "that small class which finally determine claims of right separable from, and

*Eddy, Inc.*, 506 U.S. 139, 143-44 (1993) (granting right to immediate interlocutory appeal of Eleventh Amendment immunity claims on the grounds that the "entitlement is an immunity from suit rather than a mere defense").  The Court held in *Puerto Rico Aqueduct* that the collateral order doctrine applied to state sovereign immunity claims because "the value to the States of their Eleventh Amendment immunity, like the benefit conferred by qualified immunity to individual officials, is for the most part lost as litigation proceeds past motion practice."  *Id.* at 145.  The Court specifically rejected the argument that "the Eleventh Amendment confers only protection from liability."  *Id.* at 146.  Rather, the "Amendment is rooted in a recognition that States, although a union, maintain certain attributes of sovereignty, including sovereign immunity" and that "[w]hile application of the collateral order doctrine in this type of case is justified in part by a concern that States not be unduly burdened by litigation, its ultimate justification is the importance of ensuring that the States' dignitary interests can be fully vindicated."  *Id.*  In short, the "Eleventh Amendment is concerned not only with the States' ability to withstand suit, but with their privilege not to be sued."  *Id.* at fn. 5; *see also, Siegert v. Gilley*, 500 U.S. 226, 232 (1991) (explaining that the collateral order doctrine "permits courts expeditiously to weed out suits which fail

---

collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.").

the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits."). In *Siegert*, the Court further reasoned that "[o]ne of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert*, 500 U.S. at 232.

The Third Circuit has faithfully followed these clear Supreme Court precedents in applying the collateral order doctrine to immunity claims. *Brown v. Grabowski*, 922 F.2d 1097, 1106 (3d Cir. 1990) ("qualified official immunity with respect to federal statutory and constitutional claims constitutes an immunity from suit, as well as a defense to ultimate liability."); *Acierno v. Cloutier*, 40 F.3d 597, 605 (3d Cir. 1994) ("an order denying a defense of immunity is reviewable before trial because immunity from federal claims encompasses not only immunity from liability, but also immunity from suit."); *George v. Rehiel*, 738 F.3d 562, 571 (3d Cir. 2013) (questions of immunity must be resolved at the earliest possible stage of the litigation to protect the rights of a defendant asserting immunity); *Stangl v. Port Authority*, 181 Fed. Appx. 231 (3d Cir. 2006) (citing *Bell-Atlantic-Pennsylvania, Inc. v. Pa. Pub. Util. Comm'n,* 273 F.3d 337, 343 (3d Cir. 2001) (holding that "denial of a defense of sovereign immunity is immediately appealable under the collateral order doctrine."); *Fed. Ins. Co. v. Richard I. Rubin & Co.*, 12

F.3d 1270 (3d Cir. 1993) ("sovereign immunity is an immunity from trial and the attendant burdens of litigation on the merits, and not just a defense to liability on the merits.").[6]

Here, while the bankruptcy court rightly granted a stay, it did so for only a very limited time period – 28 days. Moreover, the bankruptcy court also kept on calendar the trial date of March 19, 2019, suggesting that it still has jurisdiction over the case. This Court should extend the stay and order that the bankruptcy court is divested of jurisdiction over the adversary proceeding. As discussed in more detail in section II below, 28 days is not enough time to complete the appeal.

In addition, a "stay" is not actually a stay if the trial date in the supposedly stayed proceeding remains on calendar. The purpose of the stay and divesting the bankruptcy court of jurisdiction during a sovereign immunity appeal, is to prevent a sovereign immunity claimant from having to participate in a proceeding to which

---

[6] The Third Circuit is not alone in affording immunity claimants the right to be free from the burdens of litigation while its appeal is being of course resolved on the merits. *Dibble v. Fenimore*, 339 F.3d 120, 123 (2d Cir. 2003) ("immunity is intended to shield the defendant not only from an adverse outcome, but also from the burden of having to go through the litigation process at all" and "the defendant would irrevocably lose his benefit of immunity if obligated to defend the case at trial."); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 65 (2d Cir. 1999) ("The immunity protects the official not just from liability but also from suit on such claims, thereby sparing him the necessity of defending by submitting to discovery on the merits or undergoing trial."); *Smith v. Reagan*, 841 F.2d 28, 31 (2d Cir. 1988) ("The purpose of early determination of immunity defenses is . . . to lift the burdens of litigation from a defendant who should not be a party at all."); *Stewart v. Donges*, 915 F.2d 572, 575-76 (10th Cir. 1990) (holding that trial court is divested of jurisdiction during appeal based on the denial of immunity because "the central issue on appeal is the defendant's asserted right to not have to proceed to trial."); *United States v. Moats*, 961 F.2d 1198, 1201 (5th Cir. 1992)) ("the purpose behind collateral order appeals from denials of . . . immunity is to effectuate the guarantee that immune parties will not become embroiled in litigation."); *Minotti v. Lensink*, 798 F.2d 607, 608 (2d Cir. 1986) ("In the case of an absolute immunity such as that provided by the Eleventh Amendment, the essence of the immunity is the possessor's right not to be haled into court—a right that cannot be vindicated after trial."); *Harris v. Deveaux*, 780 F.2d 911, 913 (11th Cir. 1986) ("Absolute immunity is meant to protect not only from liability, but from going to trial at all.").

it does not belong.  Keeping the trial date on calendar—especially one that is less than two months away—forces the parties to continue to prepare for trial during what is supposed to be a stay.

Thus, the Court should extend the stay to run until at least 30 days after entry of this Court's judgment or order on the appeal, which is the deadline for an appeal of this Court's ruling to the Third Circuit.  *See* Fed. Rule of App. Proc. 4(a)(1)(A).

**B.    The Court should extend the stay because 28 days is not enough time for the parties and the Court to resolve the appeal on its merits.**

As the authorities above demonstrate, a party claiming immunity is entitled to a final resolution on the merits of its claim without having to participate in the underlying proceeding.  Given the various issues that the parties and the Court must address, a final resolution in this case is obviously going to take much longer than 28 days.

First, the Court must in the first instance determine what issues the Court will hear and decide on appeal.  There is no dispute that the Appellants are entitled as of right under the collateral order doctrine to immediately appeal the bankruptcy court's denial of the Appellants' motion to dismiss on sovereign immunity grounds.  *Puerto Rico Aqueduct and Sewer Authority*, 506 U.S. at 145; *Bell Atlantic-Pennsylvania*, 273 F.3d at 343.  But the bankruptcy court also denied the Appellants' motion to dismiss on two other jurisdictional grounds, and the

-14-

Appellants have sought leave from this Court to appeal those two other rulings (which are contained in the same order denying the motion to dismiss). The Appellants filed a motion with this Court on January 14, 2019, seeking such leave under 28 U.S.C. § 158(a)(3). Dkt No. 56. The Trustee is expected to file an opposition today, January 28. The Appellant will file a reply on February 4, just two weeks before the current February 19 stay deadline.

Second, once the Court determines the issues allowed on the appeal—*i.e.,* rules on the Appellants' motion for leave discussed above—the parties will then brief the issues on appeal. Regardless of whether the Court holds oral argument, the briefing alone will take at least two months. At minimum, the Appellants should be allowed 25 to 30 days for their opening brief, the Trustee should be allowed 25 to 30 days for his response brief, and the Appellants should be allowed 14 to 21 days for their reply brief.

Any minimum briefing schedule would obviously run long past the current February 19 stay deadline.

Third, the parties will participate in the Court's mandatory mediation procedures. *See* Standing Order, July 23, 2014, Mandatory Mediation for Appeal from Bankruptcy Court at p.*1 "in order to more efficiently and expeditiously administer justice and assist the parties to amicably resolve the disputes which are the subject of appeals before the Court, it is appropriate and necessary for there to

-15-

be mandatory mediation of all appeals to this Court from the Bankruptcy Court.").

As contemplated by the standing order regarding mediation, the parties should

participate in the mediation before expending significant resources briefing the

merits of the appeal. *Id.* at p.*2 ("Briefing shall be deferred during the pendency

of mediation unless the Court determines otherwise.").

Participating in the mediation will of course further push out the briefing on

the merits and perhaps even the Court's ruling on the Appellants' motion for leave.

Fourth, the party that loses the appeal in this Court should have sufficient

time to seek relief before the Third Circuit before the expiration of the stay.

Indeed, if it is the Appellants that appeal, they will be entitled to a further stay

during the pendency of that appeal. The deadline to appeal an order or judgment

from this Court to the Third Circuit is 30 days. Fed. Rule of App. Proc. 4(a)(1)(A).

Thus, the stay should not expire until at least that 30-day deadline has lapsed.

Certification Pursuant To D.Del. LR 7.1.1. The undersigned counsel for the

Commission hereby certifies pursuant to D.Del. LR 7.1.1 that a reasonable effort

has been made to reach agreement with the Appellee on the matters set forth in this

motion.

## IV.  CONCLUSION

The current stay to February 19, 2019, obviously does not provide the

parties or the Court with sufficient time to finally resolve the appeal. In addition,

-17-

by imposing a deadline for the stay, in combination with keeping the March 19, 2019 trial on calendar, the bankruptcy court did not appreciate that it no longer had jurisdiction over the adversary proceeding while the appeal is pending.

WHEREFORE, Appellants respectfully request entry of an order extending the bankruptcy court's stay of the above-captioned adversary proceeding during the pendency of these appeals as set forth above, and granting Appellants such other and further relief as may be proper.

*[Signature Page Follows]*

Dated: January 28, 2019
Wilmington, Delaware

Respectfully submitted,

XAVIER BECERRA
Attorney General of California
CHRISTINA BULL ARNDT
Supervising Deputy Attorney General

 */s/ Mitchell E. Rishe*
MITCHELL E. RISHE
Deputy Attorney General
   Office of the California Attorney General
   300 S. Spring Street, Suite 1702
   Los Angeles, CA 90013
   Telephone: (213) 269-6394
   E-mail: Mitchell.Rishe@doj.ca.gov

*Counsel for the State of California*

 */s/ David M. Fournier*
David M. Fournier (DE No. 2812)
Kenneth A. Listwak (DE No. 6300)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 N. Market Street
P.O. Box 1709
Wilmington, Delaware 19899-1709
Telephone:  (302) 777-6500
Facsimile:  (302) 421-8390
E-mail:fournierd@pepperlaw.com
      listwakk@pepperlaw.com

Steven S. Rosenthal (admitted *pro hac vice*)
Marc S. Cohen (admitted *pro hac vice*)
Donald A. Miller (admitted *pro hac vice*)
Alicia M. Clough (admitted *pro hac vice*)
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone:  (310) 282-2000
Email:  srosenthal@loeb.com
      mscohen@loeb.com
      dmiller@loeb.com
      aclough@loeb.com

*and*

Judith W. Ross (admitted *pro hac vice*)
Eric Soderlund (admitted *pro hac vice*)
ROSS & SMITH, P.C.
Plaza of the Americas
700 N. Pearl Street, Suite 1610
North Tower
Dallas, TX 75201
Telephone: (214) 377-7879
E-mail:judith.ross@judithwross.com
      eric.soderlund@judithwross.com

*Counsel to California State Lands Commission*

-18-